UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-24606-ALTMAN

**JESSIE ROBINSON**,

    *Plaintiff*,

v.

**CARNIVAL CORPORATION**,

    *Defendant*.

_____/

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

On November 10, 2022, our *pro se* Plaintiff, Jessie Robinson, was using a ramp to disembark from the Carnival *Dream* in Nassau, the Bahamas, when "she fell backwards due to the steepness of the ramp." Complaint [ECF No. 1] ¶ 2.7. Two years after the incident, on November 22, 2024, Robinson filed this lawsuit against Carnival, asserting that the cruise line's negligence caused her to fall and sustain serious injuries to "her body and extremities." *Id.* ¶ 2.8. Carnival has moved for summary judgment, arguing that Robinson's lawsuit is "barred by the terms of Carnival's Ticket Contract, which require Plaintiff to file a lawsuit within a year of her alleged injury." Defendant's Motion for Summary Judgement ("MSJ") [ECF No. 7] at 1.[1] The MSJ has been fully briefed. *See* Plaintiff's Amended Response in Opposition to MSJ ("Response") [ECF No. 20]; Defendant's Reply in Support of MSJ ("Reply") [ECF No. 22]. After careful review, we **GRANT** Carnival's MSJ.

---

[1] The MSJ was originally filed as a motion to dismiss under FED. R. CIV. P. 12(b)(6). *See* MSJ at 1. But, after holding a hearing on January 29, 2025, we converted the motion to dismiss into a motion for summary judgment pursuant to Rule 12(d). *See* Jan. 30, 2025, Order [ECF No. 18] at 1; *see also Roberts v. Carnival Corp.*, 824 F. App'x 825, 826 (11th Cir. 2020) ("Roberts argues that the district court improperly considered matters outside the complaint without converting the motion to dismiss into a motion for summary judgment. We agree. The ticket contract is not central to her claims because it is not a necessary or essential part of Roberts's effort to show that she was injured due to Carnival's negligence.").

**THE FACTS**

Robinson "claims she was injured as a result of an accident that occurred while she was a passenger onboard the Carnival *Dream* on November 10, 2022." Defendant's Statement of Material Facts ("Defendant's SOF") [ECF No. 19] ¶ 2; *see also* Plaintiff's Response to Defendant's Statement of Material Facts ("Plaintiff's Response SOF") [ECF No. 21] ¶ 2 ("Undisputed."). Since Carnival believes that Robinson's Complaint is "barred by the terms of Carnival's Ticket Contract," MSJ at 1, our analysis turns on the following provision of the Ticket Contract:

> Carnival shall not be liable for any claims whatsoever for personal injury, illness or death of the Guest, unless full particulars in writing are given to Carnival within 185 days after the date of the injury, event, illness or death giving rise to the claim. **Suit to recover on any such claim shall not be maintainable unless filed within one year after the date of the injury, event, illness or death**, and unless served on Carnival within 120 days after filing. Guest expressly waives all other potentially applicable state or federal limitations periods.

Ticket Contract [ECF No. 16-1] at 19 (emphasis added).

This provision of the Ticket Contract unambiguously creates a one-year limitations period. And it's undisputed that Robinson filed her lawsuit on November 22, 2024, *see generally* Complaint, which is more than one year after she was injured, *see* Plaintiff's Statement of Material Facts ("Plaintiff's SOF") [ECF No. 21] ¶ 5 ("On November 10, 2022, I was injured while traveling on a Carnival Dream cruise ship, which for the basis of my lawsuit[.]"). As a result, this case turns on whether Robinson read (or had the chance to read) the Ticket Contract before she boarded the Carnival *Dream*. *See* Response at 4–5 ("Defendant fails to satisfy [the summary-judgment] burden because it has not presented any competent evidence demonstrating that Carnival's purported Ticket Contract was communicated to, received by, or accepted by Plaintiff."); *see also* Plaintiff's SOF ¶ 6 ("Prior to

2

embarkation, I never received, review[ed], or agreed to the purported 'Ticket Contract' produced by [the Defendant] in its [MSJ].").[2]

Carnival's evidence outlines the "usual" process by which a prospective cruise-ship passenger purchases a ticket for one of Carnival's cruises. "All guests sailing Carnival's ships are required to accept Carnival's Ticket Contract as part of the check-in process for their cruise." Defendant's SOF ¶ 3; *see also* Plaintiff's Response to Defendant's Statement of Material Facts ("Plaintiff's Response SOF") [ECF No. 21] ¶ 3 ("Disputed. Plaintiff never personally received, signed or acknowledged Carnival's purported Ticket Contract as part of the check-in process for her cruise.").[3] The check-in

---

[2] "When a district court converts a rule 12(b)(6) motion to dismiss into a rule 56(c) motion for summary judgment, and the non-moving party is not represented by counsel, the district court is required to give clear notice of the need to file affidavits or other responsive materials and of the consequences of default." *Farred v. Hicks*, 915 F.2d 1530, 1534 (11th Cir. 1990). We gave Robinson oral notice of our plan to convert the motion to dismiss into a motion for summary judgment at the January 29, 2025 hearing, and we gave her written notice in our January 30, 2025 Order, which memorialized our findings. *See* Jan. 30, 2025, Order at 1. Robinson then substantially complied with the requirements of FED. R. CIV. P. 56(c) and S.D. FLA. L.R. 56.1, but her statement of material facts (pages 1–4), her exhibits in support of her Response (pages 5–11), and her response statement of material facts (pages 13–17) were all combined into one omnibus filing. *See generally* [ECF No. 21]. That's improper, *see* S.D. FLA. L.R. 56.1(b)(1) ("All Statements of Material Facts . . . shall be filed and served as separate documents and not as exhibits or attachments."), but we'll overlook this mistake here. Similarly, Robinson's statement of material facts doubles as a sworn declaration, *see* Plaintiff's SOF at 1–4, which we normally wouldn't allow, *see* FED. R. CIV. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including . . . affidavits or declarations[.]")—but, again, we'll disregard this procedural error and consider her statement of material facts as substantive evidence.

[3] Robinson "disputes" much of Carnival's Statement of Material Facts. *See generally* Plaintiff's Response SOF. But most of these "disputations" aren't directly responsive to Carnival's proffered facts. For example, paragraph 7 of Carnival's SOF recites the Ticket Contract's relevant limitations period, *see* Defendant's SOF ¶ 7, but Robinson responds by reiterating that she "never received, signed, scrolled through, certified, or acknowledged Carnival's purported Ticket Contract on October 20, 2022 or any other date for her cruise," Plaintiff's Response SOF ¶ 7. At no point, however, did Robinson challenge Carnival's salient point, which is that the Ticket Contract contains a one-year limitations period. "Where (as here) one party disputes only a portion of the opposing party's material fact," or (in the alternative) doesn't squarely dispute the proffered material fact at all, "we presume that the rest of that material fact is admitted unless there's record evidence to suggest otherwise." *Purcell v. City of Ft. Lauderdale*, 753 F. Supp. 3d 1308, 1319 n.4 (S.D. Fla. 2024) (Altman, J.) (citing S.D. FLA. L.R. 56.1(c)); *see also, e.g.*, *Williams v. Mallet*, 707 F.Supp.3d 1340, 1348 n.6 (S.D. Fla. 2023) (Altman, J.) ("Williams 'disputes' this entire assertion. But, in his disputation, he only *really* objects to the Defendants'

process for guests primarily occurs online, and the Ticket Contract "appears on the guest's screen." Defendant's SOF ¶ 4; *see also* Plaintiff's Response SOF ¶ 4 ("Disputed. Carnival's purported Ticket Contract did not appear on Plaintiff's screen during the check-in process."). To complete the check-in process, a guest "must scroll through the entire contract" and "certify that each member of the guest's party agrees" to its terms. Defendant's SOF ¶ 5; *see also* Plaintiff's Response SOF ¶ 5 ("Disputed. Plaintiff never . . . 'scrolled through' . . . Carnival's purported the Ticket Contract; as part of the check-in process[.]"). Once "a guest accepts the Ticket Contract during the check-in process, Carnival's system records the acceptance on an electronic Ticket Contract Acceptance Report." Defendant's SOF ¶ 6; *see also* Plaintiff's Response SOF ¶ 6 ("Disputed. Plaintiff never accepted Carnival's purported Ticket Contract during the check-in process.").

After a booking is complete, Carnival's "reservation office in Miami, Florida, . . . sen[ds] a booking confirmation email to the guest which contains a link to the terms and conditions of the [T]icket [C]ontract under 'IMPORTANT NOTES[.]'" Defendant's SOF ¶ 10; *see also* Plaintiff's Response SOF ¶ 10 ("Disputed. Plaintiff never received a booking confirmation email containing a direct link to Carnival's purported Cruise Ticket Contract."). According to Carnival, the email includes the following advisement:

> Your booking is subject to the terms and conditions set forth in Carnival's Cruise Ticket Contract. You can access the Cruise Ticket Contract through www.carnival.com/bookedguest. It is important for you to read the Cruise Ticket Contract and become acquainted with the specific conditions and limitations of your cruise, including time limitations and the proper venue in which to file suit. You can also view a copy of the Cruise Ticket Contract in Carnival's website (www.carnival.com) under the Customer Service section.

---

characterization of what he was *doing* in the car . . . . Since he doesn't dispute the time or place of the encounter—or the fact that he was sitting 'partially inside the passenger side of a parked vehicle next to an open field' with the 'passenger door wide open'—we'll deem those facts admitted.").

4

Defendant's SOF ¶ 10 (citing Exemplar Booking Confirmation Email [ECF No. 7-1] at 48);[4] Plaintiff's Response SOF ¶ 10 ("Disputed. . . . As to Defendant's alleged 'Important Notes' provision, the evidence makes clear that Carnival's purported Ticket Contract is not located on its site as stated or accessible at 'www.carnival.com/bookedguest.'"). "A guest can click on the links in the confirmation email to access the full terms and conditions of the Ticket Contract." Defendant's SOF ¶ 10; *see also* Plaintiff's Response SOF ¶ 10 ("Disputed. . . . Carnival's purported Ticket Contract is not located or accessible at 'www.carnival.com/bookedguest.'").

Carnival also claims that the "full terms and conditions of booking, along with all the Cruise Ticket Contract terms, are available at all times for anyone who visits Carnival's website (https://www.carnival.com/) by clicking the link 'Cruise Ticket Contract Terms' located at the bottom of the home page." *Id.* ¶ 11; *see also* Defendant's Response SOF ¶ 20 ("Carnival's Ticket Contract is available at the bottom of its home page https://www.carnival.com/, labeled 'Cruise Ticket Contract Terms' under 'Customer Service' and 'About Carnival.'"). But Robinson disputes that this access method actually exists. *See* Plaintiff's Response SOF ¶ 12 ("Disputed. Carnival's purported Ticket Contract is not located on www.carnival.com."); *see also* Pl's Exhibit 2 [ECF No. 21] at 10–11 (showing that there is no link on Carnival's main website to "Cruise Ticket Contract Terms").

Robinson repeatedly insists that she never "received, review[ed], or agreed to the purported 'Ticket Contract'" before embarking; never "accept[ed] Carnival's purported Ticket Contract"; never

---

[4] Robinson takes issue with Carnival's use of this exemplar, which refers to a passenger named "Jessica," because she has "never gone by or used the name 'Jessica.'" Plaintiff's SOF ¶ 9; *see also* Defendant's Response Statement of Material Facts ("Defendant's Response SOF") [ECF No. 23] ¶ 9 ("Undisputed."). But the exemplar doesn't purport to depict an email that was sent to Robinson or Robinson's own "guest portal profile"; it's merely an example of the email Carnival sends to its guests once they purchase their tickets. *See* Reply at 5 ("Plaintiff also takes issue that the account referenced in Exhibit 4 to the Motion bears the name of a different individual than herself. Again, the Declaration of Suzanne Brown Vazquez indicates that the included screenshot is an 'Exemplar Booking Confirmation Email' and was never suggested to be the actual email Plaintiff and her husband received but was included only to demonstrate the acceptance process.").

5

"request[ed] or require[d] any individual to act on my behalf in any capacity pertaining to Carnival's purported Ticket Contract"; and never "personally received, signed, or acknowledged Carnival's purported Ticket Contract as part of the check-in process for my cruise." Plaintiff's SOF ¶¶ 6–8, 10. Carnival doesn't really contest any of this. Instead, Carnival says that Robinson's husband, Kenneth, "accepted the Ticket Contract on October 20, 2022" on Robinson's behalf. Defendant's SOF ¶ 9; *see also* Defendant's Response SOF ¶¶ 12–13 ("Plaintiff had her husband receive, sign, and scroll through the terms and conditions of the Ticket Contract on Plaintiff's behalf instead of Plaintiff doing so herself. . . . Plaintiff's husband, Kenneth Robinson, accepted the terms and conditions on Plaintiff's behalf on October 20, 2022."). And Carnival corroborated this assertion with its "Cruise Ticket Contract Acceptance Report," which indicates that Kenneth Robinson accepted the terms of the Ticket Contract for himself *and* for Robinson. *See* Cruise Ticket Contract Acceptance Report [ECF No. 7-1] at 44. Robinson doesn't try to disclaim her relationship with Kenneth—or deny that Kenneth saw and accepted the Ticket Contract on her behalf—but she nevertheless reiterates her view that "she did not accept Carnival's purported Ticket Contract on October 20, 2022[,] under her name of Jessie Robinson[.]" Plaintiff's Response SOF ¶ 9.

## THE LAW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* at 248. A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *Ibid.* "The mere existence of a scintilla of evidence in support of the

6

plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

At summary judgment, the moving party bears the initial burden of "showing the absence of a genuine issue as to any material fact." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."). Once the moving party satisfies its initial burden, the burden then shifts to the non-moving party to "come forward with specific facts showing there is a genuine issue for trial." *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The Court, in ruling on a motion for summary judgment, "need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3); *see also HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 F. App'x 814, 817 (11th Cir. 2017) (noting that a "court may decide a motion for summary judgment without undertaking an independent search of the record" (quoting FED. R. CIV. P. 56 advisory committee's note)). In any event, on summary judgment, the Court must "review the facts and all reasonable inferences in the light most favorable to the non-moving party." *Pennington*, 261 F.3d at 1265.

In sum, then, if there are any genuine issues of material fact, the Court must deny summary judgment and proceed to trial. *Whelan v. Royal Caribbean Cruises Ltd.*, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (Ungaro, J.). On the other hand, the Court must grant summary judgment if a party "has failed to make a sufficient showing on an essential element of her case." *Celotex,* 477 U.S. at 323; *see also Lima v. Fla. Dep't of Child. & Fams.*, 627 F. App'x 782, 785–86 (11th Cir. 2015) ("If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact

and summary judgment will be granted." (quoting *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994))).

## ANALYSIS

Carnival argues that Robinson's claims are time-barred because, through Kenneth, she agreed to the Ticket Contract (and its one-year limitations provision) before embarking on her cruise. *See* MSJ at 4 ("Plaintiff filed suit against Carnival beyond the one-year time limitation provided in the parties' ticket contract. This Court should therefore dismiss Plaintiff's Complaint as time-barred."). Since Robinson's alleged injuries occurred on November 10, 2022, "[a]nd it is undisputed that she did not file this action until November 22, 2024[,]" Carnival says that Robinson's Complaint "was filed 377 too late." *Id.* at 7.

Robinson pushes back, arguing that Carnival "has not presented any competent evidence demonstrating that Carnival's purported Ticket Contract was communicated to, received by, or accepted by Plaintiff." Response at 4–5; *see also id.* at 6–7 ("Defendant's argument requires the Court to make speculative inferences about Carnival's purported Ticket Contract that no material on file supports was accepted by or entered into by Plaintiff[.]"). In short, Robinson says that Carnival cannot enforce the Ticket Contract's one-year limitation against her. *See id.* at 9 ("Thus, the alleged one-year limitation provision within the purported 'Ticket Contract' is unenforceable, inclusive of any alleged one-year limitations provisions that Defendant . . . never communicated to Plaintiff and of which she never received or accepted."). Although Robinson does an admirable job of trying to counter Carnival's summary-judgment evidence, there's no genuine dispute of material fact that the Ticket Contract's limitations provision was reasonably communicated to Robinson. Accordingly, we find that Carnival is entitled to summary judgment.

"Claims arising from torts committed aboard ships on navigable waters are governed by general maritime law." *Breaux v. NCL (Bahamas) Ltd.*, 2022 WL 2304254, at *6 (S.D. Fla. June 24, 2022)

(Altman, J.); *see also Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989) ("[W]e note that the substantive law applicable to this action, which involves an alleged tort committed aboard a ship sailing in navigable waters, is the general maritime law[.]"). Federal maritime law establishes a three-year statute of limitations for "a civil action for damages for personal injury or death arising out of a maritime tort." 46 U.S.C. § 30106. Nonetheless, owners or agents of a ship may, by contract, limit the period for bringing a civil action to one year from the date on which the injury occurred. *See* 46 U.S.C. § 30526(b)(2) ("The owner . . . or agent of a vessel transporting passengers or property between ports in the United States or between a port in the United States and a port in a foreign country, may not limit by regulation, contract, or otherwise the period for . . . bringing a civil action for personal injury or death to less than one year after the date of the injury or death."); *see also Lowe v. Air Jamaica, Ltd.*, 755 F. Supp. 1013, 1018 (S.D. Fla. 1990) (Marcus, J.) ("We agree that [federal law] allows seagoing carriers such as Defendants to limit their liability to suits filed within one year of the occurrence of events giving rise to the action."). "Courts will enforce such a limitation if the cruise ticket provided the passenger with reasonably adequate notice that the limit existed and formed part of the passenger contract." *Nash v. Kloster Cruise A/S*, 901 F.2d 1565, 1566 (11th Cir. 1990).

The Eleventh Circuit has established a "two-factor test for reasonable communication[.]" *Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1367 (11th Cir. 2018). The first prong requires courts to look at "the physical characteristics" of the contract itself—*viz.*, the "size, placement, font, and readability of the limitations-period clause"—to see if they "reasonably communicate" the contract's terms to the passenger. *Williams v. Carnival Corp.*, 576 F. Supp. 3d 1112, 1119 (S.D. Fla. 2021) (Moore, C.J.). The second factor asks "whether [the] Plaintiff had a meaningful opportunity to be informed of the terms of the one-year limitation clause." *Id.* at 1121. This prong "concerns not whether [the plaintiff] actually read the contract, but whether he had the opportunity to." *Baer v. Silversea Cruises, Ltd.*, 752 F. App'x 861, 866 (11th Cir. 2018). The Eleventh Circuit has held that a passenger will have

9

"meaningful" constructive notice of a limitations provision if she can "access[ ] the terms of the contract online, before, during, or after embarking on the cruise or suffering her alleged injuries." *McCluskey El v. Celebrity Cruises, Inc.*, 2023 WL 3035216, at *2 (11th Cir. Apr. 21, 2023).

As to the first factor, we find that the physical characteristics of the Ticket Contract "were sufficient to reasonably communicate the [limitations provision] to [Robinson]." *Est. of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1246 (11th Cir. 2012), *superseded by statute on other grounds as stated in Caron*, 910 F.3d at 1364 n.2. The very first page of the Ticket Contract contains the following warning in bold, black capital letters:

> **TICKET CONTRACT**
> **IMPORTANT NOTICE TO GUESTS**
>
> **THIS DOCUMENT IS A LEGALLY BINDING CONTRACT ISSUED BY CARNIVAL CRUISE LINE TO, AND ACCEPTED BY, GUEST SUBJECT TO THE IMPORTANT TERMS AND CONDITIONS APPEARING BELOW.**
>
> **THE ATTENTION OF GUEST IS ESPECIALLY DIRECTED TO SECTIONS 1, 4, AND 12 THROUGH 15, WHICH CONTAIN IMPORTANT LIMITATIONS ON THE RIGHTS OF GUESTS TO ASSERT CLAIMS AGAINST CARNIVAL CRUISE LINE, THE VESSEL, THEIR AGENTS AND EMPLOYEES, AND OTHERS, INCLUDING FORUM SELECTION, CHOICE OF LAW, TIME LIMITATIONS FOR FILING SUIT, ARBITRATION, WAIVER OF JURY TRIAL FOR CERTAIN CLAIMS, AND CLASS ACTION WAIVER.**
>
> **THE ATTENTION OF GUEST IS ALSO ESPECIALLY DIRECTED TO SECTIONS 5 AND 6, WHICH CONTAIN IMPORTANT TERMS, CONDITIONS, POLICIES, PROCEDURES AND REQUIREMENTS RELATED TO PUBLIC HEALTH SUCH AS COVID-19.**

Ticket Contract at 4. If a prospective passenger scrolls down to Section 14 (one of the sections to which guests are "especially directed"), she would see another bold, capitalized heading followed by the limitations provision:

> **14. TIME LIMITS FOR CLAIMS, JURISDICTION, VENUE, ARBITRATION AND GOVERNING LAW**
>
> (a) Carnival shall not be liable for any claims whatsoever for personal injury, illness or death of the Guest, unless full particulars in writing are given to Carnival within 185 days after the date of the injury, event, illness or death giving rise to the claim. Suit to recover on any such claim shall not be maintainable unless filed within one year after the date of the injury, event, illness or death, and unless served on Carnival within 120 days after filing. Guest expressly waives all other potentially applicable state or federal limitations periods.

*Id.* at 18.

We agree with Carnival that the Ticket Contract's warning is sufficient to meet the "physical characteristics" prong. *See, e.g., Est. of Myhra*, 695 F.3d at 1245 ("On the very first page of that packet documents was a single-page 'Dear Guest(s)' letter, the close of which contained, in all capital letters a section labeled, 'IMPORTANT NOTICE TO GUESTS,' specifically directing attention to the terms and conditions at the back of the brochure."); *Nash*, 901 F.2d at 1567 (approving "NOTICE: THE PASSENGER'S ATTENTION IS SPECIFICALLY DIRECTED TO THE TERMS AND CONDITIONS OF THIS CONTRACT APPEARING ON PAGES 6, 7, AND 8" as "legally-sufficient notice"); *Roberts v. Carnival Corp.*, 2022 WL 834905, at *5–6 (S.D. Fla. Mar. 21, 2022) (Bloom, J.) (finding an identical contractual provision from Carnival to be "sufficiently clear and conspicuous to meet the first prong of the reasonable communicative test"); *Calixterio v. Carnival Corp.*, 2016 WL 3973791, at *3 (S.D. Fla. Jan. 7, 2016) (Williams, J.) (same). We thus easily conclude that the Ticket Contract's physical characteristics reasonably communicate its limitations period to prospective passengers.[5]

Which brings us to the second factor: whether Robinson "had ample opportunity to become meaningfully informed of the limitations provision." *Baer*, 752 F. App'x at 865. Carnival contends that Robinson "had plenty of opportunity to become meaningfully informed of the [limitation] clause's

---

[5] Robinson doesn't formally contest the physical characteristics of the Ticket Contract—though she does advance two related arguments, which we'll address here. *One*, Robinson objects to Carnival's reliance on the "'exemplar' version of Carnival's purported Ticket Contract, which is dated December 16, 2024—more than two years after Plaintiff's cruise." Response at 5; *see also* Exemplar Ticket Contract [ECF No. 7-1] at 6–23. But Carnival also filed a version of the Ticket Contract that was in use on October 20, 2022, *see generally* Ticket Contract, so the propriety of the Exemplar Ticket Contract is of no concern to us, *see* Reply at 5 ("Any miscommunication concerning the operative Ticket Contract in October 2022 has been clarified and Plaintiff has brought no genuine dispute as to its authenticity."). *Two*, Robinson says that Carnival's description of the Ticket Contract's physical characteristics is "inaccurate." Response at 9. But we've seen the Ticket Contract ourselves (and inserted its relevant provisions into this Order) and find that: (1) there's nothing inaccurate about Carnival's description; and (2) every court to have considered a similar-looking contract has found its characteristics sufficient to give proper notice.

11

terms." MSJ at 7. In fact, according to Carnival, Robinson (or any other similarly-situated passenger) could have reviewed the Ticket Contract in three different ways. *First*, when booking a ticket online, the guest is "required to accept Carnival's Ticket Contract," "the Ticket Contract appears on the guest's screen[,]" and the guest "must scroll through the entire contract and then certify that each member of the guest's part agrees to the terms of the Ticket Contract." Defendant's SOF ¶¶ 3–5; *see also* Declaration of Suzanne Brown Vazquez ("Vazquez Decl.") [ECF No. 7-1] ¶ 4 (same). *Second*, once the passenger completes the booking, she receives "a booking confirmation email . . . which also contains a link to the terms and conditions of the [Ticket Contract] under 'IMPORTANT NOTES[.]'" Defendant's SOF ¶ 7 (citing Vazquez Decl. ¶ 7). The exemplar "booking confirmation email" Carnival uses to illustrate this method invites guests to "access the Cruise Ticket Contract through www.carnival.com/bookedguest." [ECF No. 7-1] at 48. *Third*, Carnival says that *any person* at *any time* can view "the full terms and conditions of booking by clicking the link 'Cruise Ticket Contract Terms' located at the bottom" of Carnival's website. Vazquez Decl. ¶ 9.

Resisting all this, Robinson first claims that the Ticket Contract can't be accessed via Carnival's website or through the booking-confirmation email. *See* Plaintiff's SOF ¶ 21 ("Carnival's purported Ticket Contract is not located or accessible at 'www.carnival.com/bookedguest.'"); *id.* ¶ 22 ("Carnival's purported Cruise Ticket Contract is not 'on Carnival's website (www.carnival.com) under the Customer Service section.'"); *see also* Response at 8 ("[T]he evidence makes clear that Carnival's purported Ticket Contract is not located on its site as stated." (citing Pl's Exhibits 1 and 2 [ECF No. 21] at 6–11)). Carnival disputes this. *See* Defendant's Response SOF ¶ 21 ("Disputed. While the Ticket Contract is not immediately available at www.carnival.com/bookedguest just by clicking the hyperlink, the Ticket Contract can be accessed once a guest is logged into their portal."); *id.* ¶ 22 ("Disputed. Carnival's Ticket Contract is available at the bottom of its home page[.]" (citing Vazquez Decl. ¶¶ 7–8)). At summary judgment, however, we must accept Robinson's sworn averment that a guest cannot

12

view the Ticket Contract by going *either* onto Carnival's website *or* through the booking-confirmation email. *See State Farm Mut. Auto. Ins. Co. v. Duckworth*, 648 F.3d 1216, 1219 n.6 (11th Cir. 2011) ("In reviewing a summary judgment [motion], we consider the evidence in the light most favorable to the non-movant. Thus, in stating the facts, we afford [the non-movant] all credibility choices and the benefit of all reasonable inferences the facts yield." (cleaned up)).

Nevertheless, Robinson doesn't dispute that "[a]ll guests sailing on Carnival's ships are required to accept Carnival's Ticket Contract" or that guests "must scroll through the entire contract and then certify that each member of the guest's party agrees to the terms of the Ticket Contract." Defendant's SOF ¶¶ 3, 5. And this requirement—that passengers view the entire Ticket Contract and certify that they've read it before purchasing a ticket—is more than sufficient to give those passengers an opportunity to become familiar with the limitations provision. *See Williams*, 576 F. Supp. 3d at 1122 ("Defendant's records reflect, and Plaintiff does not dispute, that she acknowledged and accepted the terms and conditions of the ticket contract on June 14, 2019. Plaintiff also does not dispute that, in acknowledging and accepting the terms of the ticket contract, she was required to scroll to the bottom of the ticket contract. Necessarily, Plaintiff would have had to scroll past the one-year limitation clause at issue in this case." (cleaned up)). So, Robinson instead says that she *herself* "never personally received, signed, or acknowledged Carnival's purported Ticket Contract as part of the check-in process for her cruise." Plaintiff's Response SOF ¶ 3; *see also* Plaintiff's SOF ¶ 10 ("I never personally received, signed, or acknowledged Carnival's purported Ticket Contract as part of the check-in process for my cruise."); Response at 9 ("Defendant's assertion that Plaintiff had 'plenty of opportunity' is baseless. Plaintiff, in her Declaration, denies ever having received the purported 'Ticket Contract' let alone enter into the same or agree to its terms.").

But whether Robinson *actually* read the Ticket Contract "is not relevant to the reasonable communicativeness inquiry." *Est. of Myhra*, 695 F.3d at 1246 n.42 (citing *Krenkel v. Kerzner Int'l Hotels*

13

*Ltd.*, 579 F.3d 1279, 1282 (11th Cir. 2009)); *see also Baer*, 752 F. App'x at 866 ("But the second prong of the reasonable communicativeness test concerns not whether Baer actually read the contract, but whether he had the opportunity to."). That's why Carnival doesn't bother to contest Robinson's assertion that *she* never reviewed the Ticket Contract before she went on her cruise. *See generally* Defendant's Response SOF. Its position, stated plainly, is that "Kenneth Robinson accepted the Ticket Contract" on Robinson's behalf. Defendant's SOF ¶ 9; *see also* Reply at 4 ("Plaintiff's arguments that she personally never 'received, signed, or acknowledged' the Ticket Contract are of no moment: Plaintiff, through her husband, Kenneth Robinson, accepted the terms of the Ticket Contract during the check-in process.").

To prevail here, then, Carnival must first produce unrebutted evidence that Kenneth Robinson accepted the Ticket Contract on behalf of Robinson. Once that's established, Carnival must then show that Kenneth's acceptance was sufficient to reasonably put Robinson on notice of the Ticket Contract's limitations period. Carnival succeeds on both fronts. Carnival's Cruise Ticket Contract Acceptance Report unambiguously shows that Kenneth Robinson accepted the terms of the Ticket Contract on behalf of himself *and his wife* (our Plaintiff) on October 20, 2022. *See* Cruise Ticket Contract Acceptance Report [ECF No. 7-1] at 44. But for this acceptance—the undisputed evidence shows—Kenneth and Jessie Robinson would not have been allowed to board the cruise. *See* Vazquez Decl. ¶ 4 ("All guests sailing on Carnival's ships are required to accept the Ticket Contract as part of the check-in process for their cruise."). Robinson doesn't even try to controvert this evidence, arguing only that Kenneth's acceptance simply isn't good enough. *See* Response at 5–6 ("Similarly, . . . the 'Cruise Ticket Contract Acceptance Report' . . . also does not establish any communication to or acceptance of Carnival's purported Ticket Contract by Plaintiff. . . . [T]he purported Report itself clearly shows that Plaintiff's name is not listed in the 'Accepted By' section. Rather, it lists Kenneth Robinson, not Plaintiff, as the individual who purportedly accepted the contract."); Plaintiff's SOF ¶

14

17 ("I did not accept Carnival's purported Ticket Contract on October 20, 2022 under my name of Jessie Robinson, nor under a name of Kenneth Robinson.").

Unfortunately for Robinson, federal courts have repeatedly and roundly rejected her theory. Indeed, judges in our District have consistently held that a passenger receives constructive notice of a cruise line's ticket contract when another person accepts the terms of the contract on the passenger's behalf. *See, e.g.*, *Roberts*, 2022 WL 834905, at *8 ("Notably, even accepting Plaintiff's assertion that she was not involved in the booking process and does not know how to use a computer, Plaintiff does not dispute that Ms. Jones was Plaintiff's agent for purposes of booking her ticket. Nor does she challenge whether Ms. Jones accepted the Ticket Contract on her behalf. . . . Thus, to the extent Ms. Jones affirmatively accepted the terms of the Ticket Contract on Plaintiff's behalf, Plaintiff is charged with constructive notice of the Ticket Contract's provisions, including the limitations period found in Clause 13."); *Calixterio*, 2016 WL 3973791, at *5 ("Plaintiff's contention that she never gave her mother-in-law express authority to accept the ticket's terms on her behalf and that therefore the ticket contract should not be enforced against her is equally unavailing. No express authorization for the third-party purchaser is necessary to create a contract between the passenger and the carrier. Plaintiff knew or should have known that she needed a ticket to board the cruise, and that when she boarded the cruise using the ticket her mother-in-law purchased for her, that ticket became a valid contract for passage between Plaintiff and Defendant." (cleaned up)); *Kirby v. NCL (Bahamas) Ltd.*, 2010 WL 11556551, at *1 (S.D. Fla. Dec. 28, 2010) (King, J.) ("According to Plaintiff, Ms. Springer friend set up an account in Plaintiff's name and handled the ticketing because Plaintiff's internet was not functioning. As such, Plaintiff contends that she cannot be bound by the contractual terms contained within NCL's Passenger Ticket Contract. The Court finds that Plaintiff cannot avoid her contractual obligations for the reasons she states. Essentially, Plaintiff argues that a party to a contract cannot be held to a contract that was entered into on her behalf by an individual acting as her agent. This position

15

is clearly contrary to established law.").[6] Moreover, "even if [Robinson] had no opportunity to read the [Ticket Contract] before accepting its terms upon boarding the vessel, she had a year after the accident to apprise herself of its conditions." *Calixterio*, 2016 WL 3973791, at *4 (first citing *Angel v. Royal Caribbean Cruises, Ltd.*, 2002 WL 31553524, at *4 (S.D. Fla. Oct. 22, 2002) (Ungaro, J.); and then citing *Racca v. Celebrity Cruises, Inc.*, 376 F. App'x 929, 931 (11th Cir. 2010)). We thus agree with Carnival that Robinson is bound by the Ticket Contract, which her husband accepted for her and which she had a reasonable opportunity to review.[7]

*     *     *

In short, Robinson's claims are time-barred by the Ticket Contract. The physical characteristics of the Ticket Contract gave Robinson fair notice of the limitations period, and Robinson's husband—who scrolled through the Ticket Contract and acknowledged its terms before

---

[6] *See also Hunter v. NCL (Bahamas) Ltd.*, 2021 WL 11646303, at *6 (M.D. Fla. Feb. 15, 2021) (Richardson, Mag. J.) ("First, the undersigned finds that Plaintiff had constructive notice of the Guest Ticket Contract and the arbitration clause because the travel agent who booked the cruise on Plaintiff's behalf, in completing the electronic booking process, was required to acknowledge and accept the terms of the Guest Ticket Contract. Thus, as the travel agent received meaningful notice of the Guest Ticket Contract and its terms, Plaintiff is charged with constructive notice of the same." (cleaned up)), *report and recommendation adopted*, 2021 WL 11646314 (M.D. Fla. Mar. 31, 2021) (Davis, J.); *Schaff v. Sun Line Cruises, Inc.*, 999 F. Supp. 924, 926 (S.D. Tex. 1998) ("Moreover, it is well established that a passenger has accepted a ticket and received notice of its contents even though a traveling companion receives and holds the passenger's ticket.").

[7] One more thing. Robinson's position that she cannot (or should not) be bound by Kenneth's acceptance of the Ticket Contract would come with serious consequences for her. If Robinson (through Kenneth) didn't accept the terms of the Ticket Contract, she would not have been aboard the Carnival *Dream* legally. *See* Vazquez Decl. ¶ 4 ("All guests sailing on Carnival's ships are required to accept the Ticket Contract as part of the check-in process for their cruise."). And, if Robinson wasn't legally aboard the Carnival *Dream*, her negligence claim would necessarily fail because Carnival wouldn't have owed her a duty of care. *See Buchanan v. Stanships, Inc.*, 744 F.2d 1070, 1074 (5th Cir. 1984) ("The standard of care owed a stowaway is one of humane treatment while he necessarily remains on board. The standard is lower than the more general standard . . . that the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." (cleaned up)); *Royal Ins. Co. of Am. v. M/Y Anastasia*, 1997 WL 608722, at *4 (N.D. Fla. Jan. 30, 1997) (Vinson, J.) ("If Thomas can prove that Morrow was trespassing, it will affect the duty Thomas owed to Morrow, since a shipowner does not owe a duty of reasonable care to those that are aboard unlawfully.").

accepting it on Robinson's behalf—had a reasonable opportunity to review the Ticket Contract. In the face of all this, Robinson's failure to read (or receive) the Ticket Contract *herself* is no defense. *See Est. of Myhra*, 695 F.3d at 1246 n.42 ("We note that whether the Myhras chose to avail themselves of the notices and to read the terms and conditions is not relevant to the reasonable communicativeness inquiry.").

## CONCLUSION

Accordingly, we hereby **ORDER** and **ADJUDGE** that Carnival's Motion for Summary Judgment [ECF No. 7] is **GRANTED**. We'll issue final judgment separately under FED. R. CIV. P. 58. All pending deadlines and hearings are **TERMINATED**, and all other pending motions are **DENIED as moot**. The case shall remain **CLOSED**.

**DONE AND ORDERED** in the Southern District of Florida on April 30, 2025.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record
      Jessie Robinson, *pro se*